```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF PUERTO RICO

LUZ VILLANUEVA BATISTA,

     Plaintiff,
                                        Civil No. 06-1872 (JAF)
     v.

DORAL FINANCIAL CORPORATION,
FEDERAL INSURANCE COMPANY,

     Defendants.
```

**OPINION AND ORDER**

Plaintiff Luz Villanueva Batista brings this diversity action for unjust dismissal under 29 L.P.R.A. § 185a ("Law No. 80") (2005) and retaliatory discharge under 29 L.P.R.A. § 194a ("Law No. 115") (2005) against Defendants Doral Financial Corporation ("Doral") and Federal Insurance Company ("FIC"). Docket Document No. 12. Defendant FIC moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket Document No. 20. Plaintiff opposes, Docket Document No. 28, and FIC replies, Docket Document No. 33. Defendant Doral moves for summary judgment. Docket Document No. 30. Plaintiff opposes, Docket Document Nos. 43, 44, and Doral replies, Docket Document No. 56.

**I.**

**Factual and Procedural Synopsis**

We derive the following facts from Defendants' and Plaintiff's motions and statements of material facts. Docket Document Nos. 12, 20, 28, 30, 31, 33, 37, 43, 44, 56.

Plaintiff began employment at Doral on May 6, 1999, as a marketing representative. On February 18, 2000, Plaintiff wrote a memorandum to Doral's president, Salomon Levi, stating that she felt harassed and that Human Resources had twice attempted to discipline her for violating Doral's employment rules. Docket Document No. 37 Ex. C. On December 5, 2000, Plaintiff requested a transfer to a different Doral branch, stating that (1) her co-workers were unprofessional; (2) other employees persecuted and harassed her; and (3) Doral's denial of the transfer would indicate its desire for her to resign. Docket Document No. 37, Ex. D. Doral agreed to the transfer.

Plaintiff received a written admonishment regarding client referrals from her supervisor on February 6, 2001. Docket Document No. 37, Ex. F. The memorandum stated that Plaintiff had received verbal warnings regarding this matter in the past. Id.

On June 25, 2001, Plaintiff transferred to Doral's Carolina branch and received a salary increase. On October 14, 2002, a supervisor reprimanded Plaintiff for punching out before ceasing work. Docket Document No. 37, Ex. H.

Plaintiff exceeded Doral's minimum requisite earnings for marketing representatives in 2000, 2001, and 2002. Docket Document

No. 30, Exs. 9, 10, 11. On November 1, 2002, Plaintiff was promoted to marketing supervisor.

On December 3, 2002, Plaintiff's Branch Manager, Luis Zambrana, held a meeting with Plaintiff and her team to resolve tension in the group. Some time in December 2002, Plaintiff informed Zambrana that she believed Doral owed her unpaid salary and commissions.

On January 23, 2003, an employee under Plaintiff's supervision, Javier Carvajal Vélez, wrote a complaint stating that Plaintiff continuously harassed and humiliated him, thereby creating a hostile and unprofessional environment. Docket Document No. 37, Ex. L. Former President of Doral Mortgage, Raúl Menéndez, visited the branch on January 21, 2003, to interview Carvajal and Teófilo Rivera, the other marketing representative under Plaintiff's supervision. Both employees complained that Plaintiff mistreated them and created a hostile working environment. Docket Document No. 37, Ex. M. Zambrana met with Plaintiff on January 22, 2003, informing her of Carvajal's and Teófilo's complaints, and requesting that she modify her supervisory style. Docket Document No. 37, Ex. N. Plaintiff refused to make any changes. Id.

Zambrana held another meeting on April 15, 2003, to discuss the problems between Plaintiff and her staff. Plaintiff addressed a complaint regarding the meeting to Zambrana, which she also sent to several of Doral's senior executives. Docket Document No. 37, Ex. P. In response, Zambrana wrote a letter to Plaintiff clarifying the

Civil No. 06-1872 (JAF)                                              -4-

purpose of the meeting, listing the employee standards violated by Plaintiff, and informing Plaintiff that she would be suspended without pay from April 25 to May 1, 2003. Docket Document No. 37, Ex. O. The letter also stated that further violations could lead to Plaintiff's termination. Id.

In April 2003, Plaintiff met with Doral President Salomon Levi to complain that Doral owed her unpaid salary and commissions. When Plaintiff sought to schedule a second meeting with Levi, he referred her complaint to Human Resources. Plaintiff then met with Human Resources and Payroll Services to discuss the matter.

On June 10, 2003, Zambrana met with Plaintiff regarding a client who entered the office looking for Zambrana that Plaintiff persuaded to meet with her instead. Docket Document No. 37, Ex. S. On June 11, 2003, Zambrana met with Plaintiff again to discuss a client that Plaintiff claimed as her own despite the fact that the client originally met with Carvajal. Docket Document No. 37, Ex. T.

On June 12, 2003, Plaintiff sent a letter to Doral's senior executives regarding the lack of punctuality of the staff in her office. Docket Document No. 37, Ex. U. On June 13, 2003, Plaintiff notified several staff members that a receptionist, Dennise López, was using the manager's computer password. Docket Document No. 37, Ex. W. On June 18, 2003, Plaintiff sent a letter to Doral's President, Edison Vélez, reporting slights against her from the

Civil No. 06-1872 (JAF)                                              -5-

"young personnel" in the office and complaining of a hostile work environment. Docket Document No. 37, Ex. X.

On June 20, 2003, Plaintiff copied Doral's senior executives on a memorandum reprimanding Carvajal for standing outside eating something during his non-designated lunch hour. Docket Document No. 37, Ex. Y. Carvajal responded by writing a letter to Menéndez on July 1, 2003, complaining of Plaintiff's behavior and requesting assistance dealing with Plaintiff when Zambrana went on vacation. Docket Document No. 37, Ex. Z. On July 24, 2003, Plaintiff had a conversation with Zambrana where she expressed herself using curse words. Zambrana documented this conversation in a memorandum. Docket Document No. 37, Ex. AA.

On August 14, 2003, Menéndez and Carlos Aponte, Vice President of Doral Mortgage, met with Plaintiff to discuss an investigation into the work environment at Plaintiff's branch. Menéndez followed up the meeting with a letter to Plaintiff stating that she must address all future complaints to Human Resources instead of senior management and that Plaintiff had violated several of Doral's rules of conduct. Docket Document No. 37, Ex. CC. The letter informed Plaintiff that she would be suspended without pay from August 14 to August 20, 2003. Id.

On August 22, 2003, Plaintiff filed a complaint against Doral in Puerto Rico local court seeking payment of $25,700 in bonuses and

Civil No. 06-1872 (JAF)                                                    -6-

commissions. Docket Document No. 37, Ex. BB. Doral received summons on August 27, 2003. Id.

On October 16, 2003, Aponte and Branch Inspector Ramón Marrero met with Plaintiff to discuss the results of an investigation conducted during Plaintiff's suspension. Docket Document No. 37, Ex. DD. During this meeting, Plaintiff was informed that she had violated several company rules of conduct. Id.

On October 20, 2003, Naphin Torres, of Human Resources, sent Zambrana an email advising him to "remember that the actions with this employee must be reviewed since there is an ongoing complaint." Docket Document No. 44, Ex. 14. On October 21, 2003, receptionist Amarilys Esquilín met with Zambrana to discuss difficulties she experienced working with Plaintiff. Docket Document No. 37, Ex. FF.

Plaintiff received a written warning on October 28, 2003, stating that if her conduct did not change, Doral would terminate her employment. Docket Document No. 37, Ex. EE.

On October 30, 2003, Plaintiff addressed a letter to Zambrana and Torres stating that Zambrana had failed to supervise the new receptionist adequately. Docket Document No. 37, Ex. GG. On the same date, Zambrana informed Plaintiff that she had violated the rules of conduct by requiring Esquilín to work overtime without compensation. Docket Document No. 37, Ex. HH.

On October 31, 2003, Plaintiff wrote to Zambrana and Torres to inform them that Esquilín had arrived late after her lunch break on

the previous day, and to demand greater access to electronic mail. Docket Document No. 37, Ex. II. On November 10, 2003, Esquilín submitted a written complaint stating that Plaintiff had humiliated her in front of clients and harassed her in general. Docket Document No. 37, Ex. JJ.

On November 14, 2003, Plaintiff complained to Zambrana and Torres about work performed on the ventilation system near her desk without previous consultation with her. Docket Document No. 37, Ex. KK. On the same date, Zambrana and Aponte met with Plaintiff to discuss Plaintiff's treatment of Esquilín and to inform her that she had been relieved of her supervisory and conflict management duties. Docket Document No. 37, Ex. MM.

Zambrana met with Plaintiff regarding her complaint about the ventilation system on November 25, 2003, and explained that the work was done to improve the office environment, and that the physical plant employees did not need to consult with Plaintiff before performing their work. Docket Document No. 37, Ex. LL.

On December 3, 2003, Plaintiff sent a memo to Zambrana, Aponte, and Torres, informing them that José Rodríguez, a marketing representative, had been absent without explanation the previous afternoon, and requesting disciplinary action against him. Docket Document No. 37, Ex. NN. In response to this memo, Zambrana met with Plaintiff and Rodríguez on December 9, 2003. Docket Document No. 37, Ex. OO. Rodríguez explained that he had fallen ill on December 3,

Civil No. 06-1872 (JAF)                                                -8-

2003, and that his mother had tried to contact the office but was not able to get through due to a problem with the switchboard. Id. Zambrana reviewed with Rodríguez the proper procedures for communication with the office in the event of an emergency. Id.

On January 20, 2004, Plaintiff wrote to Zambrana and Torres to complain about the punctuality and competence of the staff in her office. Docket Document No. 37, Ex. PP. The next day, Plaintiff wrote a memo to Esquilín complaining about her attitude and job performance. Docket Document No. 37, Ex. QQ.

Plaintiff began her deposition in the Puerto Rico case against Doral on January 26, 2004.

On January 28, 2004, Plaintiff wrote another memo to Esquilín criticizing her attitude and job performance. Docket Document No. 37, Ex. TT. On February 3, 2004, Plaintiff complained to Zambrana and Torres of harassment from the young personnel at the bank. Docket Document No. 37, Ex. UU. On February 6, 2004, Plaintiff reprimanded Rodríguez for leaving work early. Docket Document No. 37, Ex. VV.

On February 18, 2004, Zambrana and Aponte met with Plaintiff to deliver a letter to her in response to her complaints about other employees. Docket Document No. 37, Ex. XX. The letter explained that Plaintiff's complaints were inappropriate because Plaintiff had been relieved of her supervisory duties in November 2003. Id. The letter also detailed Plaintiff's continued violations of the rules of

conduct despite disciplinary actions taken against Plaintiff.  Id. The letter stated that Plaintiff would be dismissed if she did not comply with instructions and alter her behavior.  Id.

On March 4, 2004, Plaintiff wrote a memo to Zambrana, Torres, and Aponte complaining that Esquilín had displayed a bad attitude towards her when Esquilín came to confront her about an incident from the previous day.  Docket Document No. 37, Ex. YY.  When Esquilín's sister called to notify Esquilín that their father had been hospitalized, Plaintiff left the call on hold.  Esquilín wrote to Aponte about the situation, expressing her distress with Plaintiff. Docket Document No. 37, Ex. ZZ.  Zambrana, Torres, and Aponte met with Plaintiff on March 12, 2004, to discuss the incident.  Docket Document No. 37, Ex. AAA.  Plaintiff refused to participate in the interview, however, claiming that her attorney had instructed her not to discuss the matter.  Id.

On March 29, 2004, Zambrana, Aponte, and former Human Resources Director Alicia Echevarría met with Plaintiff to inform her that Doral was terminating her employment, based on Plaintiff's history of violating Doral's rules of conduct and the most recent infraction, her refusal to cooperate in the investigation of the incident with Esquilín.  Docket Document No. 37, Ex. BBB.

Plaintiff filed a complaint of wrongful termination against Doral and FIC on September 5, 2006. Docket Document No. 1.  Plaintiff filed an amended complaint on April 24, 2007. Docket Document No. 12.

FIC moved to dismiss the complaint on June 22, 2007. Docket Document No. 20. Plaintiff opposed the motion on August 13, 2007. Docket Document No. 29. Doral moved for summary judgment on September 20, 2007. Docket Document No. 30. FIC replied to Plaintiff's opposition to their motion to dismiss on October 1, 2007. Docket Document No. 33. Plaintiff opposed Doral's motion for summary judgment on November 11, 2007. Docket Document Nos. 43, 44. Doral replied to Plaintiff's opposition on November 27, 2007. Docket Document No. 56.

## II.

### Standard for Rule 56(c) Motion for Summary Judgment

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." See Celotex Corp. v. Catrett,

477 U.S. 317, 325, 331 (1986). The burden has two components: (1) an initial burden of production, which shifts to the non-moving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. See id. at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." Euromodas, Inc. v. Zanella, 368 F.3d 11, 17 (1st Cir. 2004) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

**III.**

**Analysis**

Doral argues that we should grant its motion for summary judgment because (1) Plaintiff's termination was justified as the final step of an unsuccessful disciplinary process, and (2) Plaintiff cannot prove that Doral's given reason for her termination is pretext for retaliation. Docket Document No. 30, Ex. 3.

Plaintiff brings the present complaint under Puerto Rico's Law No. 80 and Law No. 115. Docket Document No. 12.

Law No. 80 provides a private right of action for employees who are discharged "without just cause." 29 L.P.R.A. § 185a. To establish

just cause, Defendants must demonstrate by a preponderance of the evidence that Plaintiff "did not perform her duties according to [Doral's] standards." Rivera Aguila v. K-Mart de P.R., 123 P.R. Offic. Trans. 599, 611 (1989). Just cause exists when the employee repeatedly violates "the reasonable rules and regulations established for the operation of the establishment, provided a written copy has been opportunely furnished to the employee." 29 L.P.R.A. § 185b.

The record in the present case amply demonstrates a long history of disciplinary measures brought against Plaintiff in response to her recurring violations of Doral's rules of conduct. These disciplinary measures include two weeks of suspension without pay, numerous written reprimands specifically identifying which rules of conduct Plaintiff's behavior violated, and minutes from meetings called to address issues between Plaintiff and other staff members. Docket Document No. 37, Exs. N, O, S, T, CC, DD, EE, HH, MM, XX. Defendant has also established that Plaintiff received a written copy of Doral's rules of conduct. Docket Document No. 37, Ex. I. We, therefore, find that Doral dismissed Plaintiff with just cause, and grant Defendants summary judgment on Plaintiff's Law No. 80 claim.

Plaintiff also claims that Doral violated Puerto Rico's Law No. 115 by discharging her in response to the civil action Plaintiff filed against Doral in August 2003. Docket Document No. 12.

Law No. 115 provides that an employer may not discharge an employee for offering "any testimony, expression or information

Civil No. 06-1872 (JAF)                                                    -13-

before a . . . judicial forum in Puerto Rico." 29 L.P.R.A. § 194a(a). To prove liability under Law No. 115, an employee must first establish a prima facie case by showing that she participated in a protected activity and was subsequently discharged. 29 L.P.R.A. § 194a(c). Next, the employer must offer a legitimate, non-discriminatory reason for the discharge. Id. Finally, the plaintiff may prevail by demonstrating that the alleged reason is a "mere pretext for the discharge." Id.

The basic facts of the present case easily establish Plaintiff's prima facie case. Plaintiff engaged in protected activity, the filing of a lawsuit, and Doral subsequently discharged her. Defendant, in turn, has satisfied its burden to present a legitimate, non-discriminatory reason for the discharge in the form of Plaintiff's continuing violations of Doral's rules of conduct. Docket Document No. 30, Ex. 2. Plaintiff, however, has failed to demonstrate that this reason was mere pretext for Defendant's true, retaliatory motives.

The only evidence proffered by Plaintiff to demonstrate pretext is an email written by Torres to Zambrana on October 20, 2003, instructing him to "remember that the actions with this employee must be reviewed since there is an ongoing complaint." Docket Document No. 44, Ex. 1 (citing Docket Document No. 44, Ex. 14). Without more, we fail to see how this communication demonstrates that Defendant planned to discharge Plaintiff five months later, on March 29, 2004.

In contrast, the record demonstrates a history of disciplinary problems with Plaintiff that began long before Plaintiff filed her complaint against Doral in August 2003. Docket Document No. 37, Exs. N, O, S, T, AA, CC.

Plaintiff argues that her problems at Doral began in response to Plaintiff's initial complaints about unpaid salary and commissions to Zambrana made in November 2002. Docket Document No. 44, Ex. 1. The record demonstrates, however, that Plaintiff experienced problems working with other Doral employees as early as February 2000. Docket Document No. 37, Ex. C. Even if Plaintiff's contentions were true, however, Law No. 115 does not prohibit retaliation in response to internal complaints, only offerings to a judicial forum. 29 L.P.R.A. § 194a(a); Hoyos v. Telecorp Commc'ns., 405 F.Supp.2d 199, 207 (D.P.R. 2005).

Plaintiff has failed to establish that Doral's stated reason for discharging her, her continuing violation of its rules of conduct, is mere pretext. We, therefore, grant Defendants summary judgment on Plaintiff's Law No. 115 claim.

Having dismissed both of Plaintiff's claims, we find Defendant FIC's motion to dismiss, Docket Document No. 20, moot.

**IV.**

**Conclusion**

For the aforementioned reasons, we hereby **GRANT** Defendants' motion for summary judgment, Docket Document No. 30, pursuant to

Civil No. 06-1872 (JAF)                                                -15-

Federal Rule of Civil Procedure 56.  We **DISMISS** Plaintiff's claims **WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 14th day of December, 2007.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge